**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|  |  |  |
|---|---|---|
| | : | |
| **RICHARD D. SIMON, Individually** | : | **CIVIL ACTION** |
| **and as Attorney-In-Fact for Vera** | : | **No. 04-941** |
| **Pomerantz, and on behalf of all others** | : | |
| **similarly situated, and VERA** | : | |
| **POMERANTZ, Individually through** | : | |
| **Her Attorney-In-Fact and on behalf of** | : | |
| **all others similarly situated,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| | : | |
| **ROBIN L. WIESSMAN,** | : | |
| **Treasurer of the Commonwealth of** | : | |
| **Pennsylvania,** | : | |
| | : | |
| **Defendant.** | : | |

---

**DuBOIS, J.**                                                                                    **AUGUST 27, 2007**

## MEMORANDUM

### I.      INTRODUCTION

Plaintiffs[1] bring this class action against Robin L. Wiessman,[2] Treasurer of the

Commonwealth of Pennsylvania, for failing to pay interest allegedly earned on property

confiscated pursuant to the Disposition of Abandoned and Unclaimed Property Act ("DAUPA"),

72 Pa C.S. § 1301.1, *et seq.*  Plaintiffs assert that DAUPA, which the Commonwealth Court has

---

[1] Ronald Smolow was the original lead plaintiff and class representative in this case.  By Order and Memorandum dated June 25, 2007, the Court granted Defendant's Motion for Summary Judgment as to plaintiff Smolow.  The Second Amended Complaint, filed July 16, 2007, replaced plaintiff Smolow with plaintiffs Richard D. Simon and Vera Pomerantz.

[2] This action was originally filed against Barbara Hafer, who was Pennsylvania Treasurer at that time.  Robin L. Wiessman currently serves as Pennsylvania treasurer.  Under Fed. R. Civ. P. 25(d)(1) and 24 U.S.C. § 405(g), Robin L. Weissman is automatically substituted as defendant in this action.

interpreted as not requiring payment of interest when property delivered to the Pennsylvania Department of Treasury ("Treasury") is returned to the property owners,[3] violates the Just Compensation and Due Process Clauses of the United States Constitution.

Currently before the Court is Defendant's Motion for Summary Judgment. Defendant argues that, whether or not the interest earned on plaintiffs' property exceeded the cost of handling their property and processing their claims, plaintiffs have not suffered a taking without just compensation. The Court agrees: even though absolute title does not pass to the Commonwealth under DAUPA, plaintiffs are not entitled to interest on property which is presumed abandoned under that statute. Thus, Defendant's Motion for Summary Judgment is granted and judgment is entered in favor of defendant, Robin L. Wiessman, and against plaintiffs, Richard D. Simon and Vera Pomerantz, individually and on behalf of all other similarly situated.

## II.    PROCEDURAL HISTORY

Three previous opinions set forth the procedural of this case. Smolow v. Hafer, 353 F. Supp. 2d 561 (E.D. Pa. 2005); Smolow v. Hafer, 2005 WL 1377849 (E.D. Pa. June 8, 2005); Smolow v. Hafer, 2007 WL 1879180 (E.D. Pa. June 25, 2007). Accordingly, this Memorandum recites only the procedural history relevant to the issues presented by the instant Motion for Summary Judgment.

On May 3, 2004, Ronald Smolow, the original lead plaintiff in this case, filed a class action against Barbara Hafer, Treasurer of the Commonwealth of Pennsylvania. In his Amended Class Action Complaint, filed May 11, 2004, plaintiff Smolow alleged state common law and

---

[3] Smolow v. Hafer, 867 A.2d 767, 776 (Pa. Commw. Ct. 2005).

constitutional claims and violations of DAUPA.  Plaintiff Smolow also alleged federal constitutional claims for unlawful taking without just compensation and violation of his substantive and procedural due process rights.  On May 8, 2004, plaintiff Smolow filed a class action in the Commonwealth Court of Pennsylvania alleging almost identical state and federal law claims.

On January 24, 2005, this Court issued a Memorandum and Order granting defendant's Motion to Dismiss plaintiff Smolow's state law claims and request for restitution, and denying the Motion with respect to plaintiff Smolow's federal constitutional claims and request for prospective relief.  In so ruling, the Court abstained from further adjudication of plaintiff Smolow's federal claims and stayed all further proceedings pursuant to the doctrine announced in R.R. Comm'n of Texas v. Pullman Co., 61 S.Ct. 643 (1941), "pending a determination in the courts of the Commonwealth of Pennsylvania as to whether DAUPA, 72 Pa.C.S. 1301.01 et seq., requires the payment of interest earned upon property confiscated pursuant to that Act."  Smolow v. Hafer, 353 F. Supp. 2d 561, 576 (E.D. Pa. 2005).

On February 9, 2005, the Commonwealth Court sustained defendant's preliminary objections and dismissed plaintiff Smolow's state court action, holding, inter alia, that DAUPA did not require the Treasury to pay interest on confiscated property.  Smolow v. Hafer, 867 A.2d 767, 776 (Pa. Commw. Ct. 2005).  Pursuant to the procedure announced in England v. Louisiana State Bd. of Med. Exam'rs, 375 U.S. 411, (1964), plaintiff Smolow reserved the federal law claims that are at issue in the instant Motion for Summary Judgment.  Smolow v. Hafer, 2005 WL 1377849, *1-2 (E.D. Pa. June 8, 2005).

On March 9, 2005, plaintiff Smolow filed a Notice of Appeal of the Commonwealth

3

Court decision in the Pennsylvania Supreme Court.   In the Notice of Appeal, plaintiff Smolow stated that he did not seek review of the Commonwealth Court's holding that DAUPA does not require payment of interest, the issue underlying this Court's decision to abstain and stay proceedings in this case.  The appeal is still pending.

On June 8, 2005, this Court issued a Memorandum and Order granting defendant's Motion to Vacate Stay.   Smolow v. Hafer, 2005 WL 1377849, * 4 (E.D. Pa. June 8, 2005). In that opinion, the Court also denied defendant's Supplemental Motion to Dismiss, noting that "the question of whether plaintiff suffered a taking without just compensation as a result of defendant's failure to pay him interest required further factual development of the record" to determine whether plaintiff suffered a net loss.  Id. (citing Brown v. Legal Foundation of Washington, 538 U.S. 216 (2003)).  That is, for plaintiff Smolow to have suffered a taking without just compensation, the amount of interest earned on his property must have exceeded the cost of handling the property and processing his claim.  See id.

On June 25, 2007, the Court issued a Memorandum and Order that: (1) denied Plaintiff's Motion *In Limine* to Exclude Portions of the Expert Report and Testimony of John S. Stoner; (2) denied Plaintiff's Motion for Summary Judgment; and (3) granted Defendant's Motion for Summary Judgment as to plaintiff Smolow and denied that motion to the extent that it asked the Court to enter judgment against the entire class and in favor of defendant.  Smolow v. Hafer, 2007 WL 1879180, *1 (E.D. Pa. June 25, 2007).  The Court's ruling on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment was based on the determination that plaintiff Smolow suffered no net loss--the amount of interest earned on his property did not exceed the cost of handling the property and processing his claim.   Id.  The

4

Court did not reach the issue of whether a taking without just compensation would have occurred if plaintiff Smolow had sustained a net loss.  Id.

On July 16, 2007, plaintiff Smolow's counsel filed a Second Amended Complaint, replacing Smolow with Richard D. Simon and Vera Pomerantz as lead plaintiffs and class representatives.  Sec. Am. Compl.

On July 30, 2007, defendant filed the instant Motion for Summary Judgment.

## III.   FACTS

The Second Amended Complaint alleges that, "sometime after 1971, defendant took possession of property belonging to plaintiffs pursuant to DAUPA.  Plaintiffs believe that this property was common or preferred stock in National Semiconductor, or dividends from such stock, or a combination thereof, or proceeds thereof."  Sec. Am. Compl. ¶ 7.  According to plaintiffs, "after taking possession, defendant used plaintiffs' property and the proceeds for public purposes, earned interest, and perhaps other appreciation and/or dividends and/or profits, thereon."  Id. ¶ 9.

"In January 2007 plaintiff Richard D. Simon filed claims for himself (claim #99851882), and for his mother, Vera Pomerantz, as her attorney-in-fact, (claim #99851852) for their individual property in defendants' possession."  Id. ¶ 10.  "On or about February 1, 2007 . . . the Treasury approved plaintiff Richard D. Simon's claim and issued payment in the amount of $95.33.  On or about February 5, 2007 . . . the Treasury approved Vera Pomerantz's claim and issued payment in the amount of $309.55."  Id. ¶ 11-12.  "On February 16, 2007 plaintiff Richard D. Simon wrote to defendant and asked if interest would be paid on his claim and on the claim of Vera Pomerantz.  On February 20, 2007, defendant informed plaintiffs that the Treasury

5

does not pay interest . . . ."  <u>Id.</u> ¶¶ 13-14.

Although plaintiffs do not specify the amount of interest that allegedly accumulated on their property, they allege that they "have suffered a net loss of interest and/or income since defendant took possession of their property."  <u>Id.</u> ¶ 16.

## IV.   STANDARD OF REVIEW

A court should grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248  (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." <u>Id.</u> In considering a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986).  The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim.  <u>Fireman's Ins. Co. v. DuFresne</u>, 676 F.2d 965, 969 (3d Cir. 1982).

## V.   ANALYSIS

Plaintiffs assert that Treasury's retention of interest on their reclaimed property constitutes a taking without just compensation.  Defendant argues that, whether or not interest earned on plaintiffs' property exceeded the cost of handling the property and processing

plaintiffs' claims, plaintiffs have not suffered a taking without just compensation. The Court agrees with defendant. Accordingly, Defendant's Motion for Summary Judgment is granted.

1.      **DAUPA**

Under DAUPA, "property is presumed abandoned if it is unclaimed by the apparent owner for a specified period of time-in this case, for seven years." Smolow v. Hafer, 867 A.2d 767, 769 n.2 (Pa. Cmwlth. 2005) (citing 72 P.S. § 1301.6). Abandoned "property received by the Treasury Department does not permanently escheat to the state." Smolow v. Hafer, 867 A.2d 767, 774-75 (Pa. Cmwlth. 2005). DAUPA is a custodial escheat statute rather than a complete escheat statute. That is, the "Commonwealth exercises its right to take 'custody and control' of abandoned property, as opposed to taking absolute title, and [DAUPA] provides an entitled claimant the opportunity to recover his property from the Treasurer."[4] Id.

DAUPA "expressly states that '[t]he Treasurer shall be responsible to an owner only for the amount actually received by the State Treasurer upon the sale of any property.'" Id. (citing 72 P.S. § 1301.17(d)). Accordingly, "the Treasurer complied with [DAUPA] by returning 'the amount it actually received' upon the sale of the stock." Id. at 777. That is, "the Treasurer did not violate [DAUPA] by not paying interest on the property recovered for" Simon and Pomerantz. Id.

Numerous other states' unclaimed property acts provide that the comptroller or treasurer

_____

[4] This was the basis for the Commonwealth Court's holding that "delivery of Smolow's stock to the Treasury Department did not constitute a taking." Smolow v. Hafer, 867 A.2d 767, 776 (Pa. Cmwlth. 2005) (citing In re Folding Carton Antitrust Litig., 744 F.2d 1252, 1255 (7th Cir. 1984)).

retains the interest earned on reclaimed property.  See, e.g., Ind. Code § 32-24-1-30(b); Tex.

Prop. Code An. §§ 74.601(d), (e).  As Judge Posner has explained, under such statutes, "in effect,

the property is an interest-free loan to the state-in perpetuity if the owner never shows up to claim

it."  Commonwealth Edison Co. v. Vega, 174 F.3d 870, 872 (7th Cir. 1999) (Posner, J.) (noting

that "not only does the state have the free use of the property unless and until the owner reclaims

it; the state is not required to . . . pay any interest to a reclaiming owner").

### 2.      Legal Standard: Takings Without Just Compensation

"The Fifth Amendment, made applicable to the States through the Fourteenth

Amendment, Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 239 (1897), provides that

'private property' shall not 'be taken for public use, without just compensation.'"  Phillips v.

Washington Legal Found., 524 U.S. 156, 164 (1998).  "Because the Constitution protects rather

than creates property interests, the existence of a property interest is determined by reference to

'existing rules or understandings that stem from an independent source such as state law.'"  Id.

(citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)).

"[C]onstitutionally protected property rights can-and often do-exist despite statutes . . . that

appear to deny their existence."  Schneider v. California Dept. of Corrections, 151 F.3d 1194,

1199 (9th Cir. 1998) (citing Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155

(1980); Phillips, 524 U.S. 156 (1998)).  On the other hand, legislatures can alter "substantive

[property] rights through enactment of rules of general applicability."  United States v. Locke,

471 U.S. 84, 106 n.15, 108 (1985) ("Legislatures can enact substantive rules of law that treat

property as forfeited under conditions that the common law would not consider sufficient to

indicate abandonment.").

3.      **Plaintiffs' Takings Argument**

In sum, plaintiffs argue that, under the doctrine of "interest follows principal," the interest earned on the plaintiffs' property while under the Commonwealth's custody and control is plaintiffs' private property because the Commonwealth never took absolute title to the principal. Opp. at 8, 14 (citing Webb's, 449 U.S. 155, 163 (1980)).  The Court disagrees.  Even though absolute title does not pass to the Commonwealth under DAUPA, plaintiffs are not entitled to interest on property which is presumed abandoned pursuant to this statute.

Plaintiffs primarily rely on Phillips, 524 U.S. 156 and Brown, 538 U.S. 216.  In those cases, the Supreme Court held that "interest generated by funds held in IOLTA accounts [Interest on Lawyer's Trust Account] is the private property of the owner of the principal."  Brown, 538 U.S. 216, 235 (2003) (citing Phillips, 524 U.S. at 172 (relying on the "interest follows principle" rule).  In Brown, the Supreme Court stated that, but for the fact that plaintiffs had not sustained a net loss, they would have suffered a taking without just compensation.  528 U.S. at 235-39.  As several state courts have explicitly held, however, Phillips and Brown are inapposite to the type of takings claim asserted by plaintiffs, which is based on interest earned on property presumed to be abandoned.  The Court reviews these state court cases in turn.

In Smyth v. Carter, 845 N.E.2d 219 (Ind. App. 2006), review denied, 860 N.E.2d 588 (Ind. 2006), cert. denied, 127 S.Ct. 1155 (2007), the court noted that "Indiana has recognized the common law maxim that 'interest follows principal.'  Indeed, [the Indiana] supreme court held that this maxim applied to interest earned on lawyers trust accounts containing funds of the lawyers' clients [as in Phillips and Brown]."  Id. at 223.  Nevertheless, the Smyth court concluded that "the retention of interest [earned on reclaimed property] by the State pursuant to

9

Ind. Code 32-34-1-29 does not constitute an unconstitutional taking." Id. at 225.  The court

reasoned that the interest follows principle "maxim does not apply where an owner's actions

cause the loss of rights of ownership."  Id. at 223.  Even through Indiana never took absolute

title to plaintiffs' property, the Smyth court explained that the statute "conditions the retention of

full property rights upon the owner's exercise of such rights.  Failure to exercise those rights

results in a presumption of abandonment and a custodial escheat that deprives the owner of some

of the incidents of ownership."  Id. at 224 (citing Texaco, Inc. v. Short, 454 U.S. 516 (1982)).

Similarly, in Clark v. Strayhorn, 184 S.W.3d 906 (Tex. App. 2006), cert. denied, 127

S.Ct. 508 (2006), the court noted that plaintiff  "overlook[ed] an important distinction between

the . . . IOLTA cases [Phillips and Brown] and the issue of interest earned on unclaimed

property.  Interpleaded funds and funds deposited in an IOLTA account are held in trust for the

owner.  As we have discussed, unclaimed property funds are not.  There is also no question as to

who has asserted ownership of the interpleaded or IOLTA funds.  By contrast, property delivered

to the Comptroller as 'unclaimed' is presumed abandoned."  Id. at 914.  The Clark court

continued, "[u]ntil a missing owner asserts a claim, it is wholly appropriate for the Comptroller

to use unclaimed property for the benefit of the State instead of allowing a windfall to a private

holder or permitting the funds to lie fallow."  Id. at 914-15.  Accordingly, that court held "that the

[Texas] unclaimed property act does not require the State to hold unclaimed property in trust or

otherwise require payment of interest to owners.  Moreover, the State's use of unclaimed

property and retention of any interest earned before the owner asserts a claim is not an

unconstitutional taking."  Id. at 915.

In Hooks v. Treasurer, 2007 WL 1299883 (La. App. May 4, 2007), the court came to the

same conclusion with respect to the Louisiana unclaimed property act.  The <u>Hooks</u> court first

explained that "[t]he triggering event in an unclaimed property case is the owner's act of

abandonment over a period of several years  After abandonment, the unclaimed property law

requires the holder of the abandoned property to transfer custody,' not title, to the state." <u>Id.</u> at

*6.  The court then held as follows:

> When the state receives custody, it is also required to assume, in apparent perpetuity, the
> responsibility of safekeeping the property for any owners who may wish to re-claim their
> abandoned property. In return for this advantageous long-term reclaiming service, the
> state is afforded the benefit of retaining, after any deductions required by law, the interest
> earned from post-abandonment actions of the state.

> . . . [T]he legislature's decision to award owners only [limited interest] do[es] not equate
> to a "taking."

> As to the claim that the state custody imposes a fiduciary duty to seek additional interest
> for absent owners, we find no evidence in this case of such a statutorily or contractually
> imposed duty. The state is a third party to any agreement between the owner and the
> holder chosen by the owner. The statutory duty to accept custody and hold abandoned
> property in safekeeping cannot logically or fairly be stretched to create a higher fiduciary
> duty to pay interest not earned by any action of an owner who abandoned not only his
> property and investment opportunities, but also the responsibility to maintain and care for
> the property.

<u>Id.</u>

Finally, in <u>Sogg v. Ohio Dept. of Commerce</u>, 2007 WL 1821306 (Ohio App. June 21,

2007), the court concluded that, "[b]ecause of the unique nature of the property, the state's

retention of the interest earned on unclaimed funds while those funds are in the custody and

control of the state, due to the owner's failure to take any action with respect to the property for

the statutorily prescribed period of time, does not constitute a taking that requires compensation."

<u>Id.</u> at *10 (emphasis added).  The <u>Sogg</u> court reasoned as follows: "We are presented with

property, that though title admittedly remains with the owner, custody has passed to the state, and

11

is not the sort of private property as is at issue in <u>Webb's</u>, <u>Brown</u>, <u>Phillips</u>, and their progeny, that is subject to an overt taking by the government." <u>Id.</u>  As the <u>Sogg</u> court further explained, "[t]he property lapse here is not triggered by overt state action, but instead is triggered by the owner's failure to make any use of the property for a statutorily prescribed period of time." <u>Id.</u> ("As established by <u>Texaco</u>[5] and its successors, the judiciary had never required the state to compensate an owner for the consequences of his own neglect.").

The Court finds the reasoning in <u>Smyth</u>, <u>Clark</u>, <u>Hooks</u>, and <u>Sogg</u> persuasive.[6]   DAUPA

---

[5] Plaintiffs state that this Court previously ruled that there is a "fundamental difference between the situation presented in [<u>Texaco, Inc. v. Short</u>, 454 U.S. 516 (1982)] and Plaintiffs' claims" currently at issue.  Opp. at 18.  This Court ruled only that, in defendant's Supplemental Motion to Dismiss, defendant did not tie the reasoning in <u>Texaco</u> to the issue of whether a taking occurs when Treasury retains interest on reclaimed property.  Specifically, the Court concluded "that defendant's Supplemental Motion to Dismiss, and reliance on <u>Texaco</u>, fails to address plaintiff's claim, and supporting authority, that a taking without just compensation resulted only when defendant failed to pay him interest earned upon his confiscated property." <u>Smolow v. Hafer</u>, 2005 WL 1377849, at *4 (E.D. Pa. June 8, 2005).  After analyzing defendant's further submissions to the Court, the Court concludes that the Supreme Court's statement that it "has never required the State to compensate the owner for the consequences of his own neglect" is relevant to the issues presented in this case.  <u>Texaco</u>, 454 U.S. 516, 530 (1982).  To the extent that this Court's earlier opinion suggested otherwise, it is clarified by this Memorandum.

[6] Plaintiffs note that several of these courts interpreted <u>Smolow v. Hafer</u>, 867 A.2d 767, 774-75 (Pa. Cmwlth. 2005) as having resolved the federal takings claims involving interest earned on reclaimed property.  In fact, the Commonwealth Court decision did not rule on this precise issue, but rather on two related issues: (1) plaintiff Smolow did not suffer a taking when the Treasurer took custody of his property; and (2) DAUPA does not require the Treasurer to pay interest on reclaimed property.  Indeed, this Court has previously held that, pursuant to the procedure announced in <u>England</u>, 375 U.S. 411, plaintiff reserved the federal takings claims pertaining to interest.  <u>Smolow v. Hafer</u>, 2005 WL 1377849, *1-2 (E.D. Pa. June 8, 2005).

This misinterpretation is understandable because the Commonwealth Court noted in its opinion that "Smolow states in his Brief: 'Plaintiff asserts that the statute itself, by not providing for the payment of interest (a contention Defendants do not dispute) is unconstitutional.'" <u>Smolow v. Hafer</u>, 867 A.2d 767, 776 n.11 (Pa. Cmwlth. 2005).  However, this was mentioned only to support the fact that "neither party disputes . . . [that] the Unclaimed Property Law does not expressly provide for the payment of interest." <u>Id.</u> at 775.  In all other respects, the reasoning in the state court opinions is sound.

balances the interests of the relevant parties: On one hand, DAUPA benefits property owners by allowing Treasury to safekeep abandoned property and return the value of that property to verified property owners, and on the other hand, DAUPA benefits the Commonwealth because, once liquidated, the property is deposited in the General Fund for public purposes.  "While it is true that [DAUPA] is not a true escheat act, it is also true that it is not purely custodial in nature. The chief incidents of ownership of property are the rights of possession, of use and enjoyment, and of disposition."  Smyth, 845 N.E.2d at 223 (rejecting plaintiff's "belief that the State's possession of property under the Act is 'purely' custodial").   Unlike in Brown and Phillips, the property at issue in this case was not triggered by "overt state action."  See Clark, 184 S.W.3d at 918; Sogg, 2007 WL 1821306, at *10.  Rather, Treasury's "custody and control" of the plaintiffs' abandoned property was "triggered by the owner's failure to make any use of the property . . . ." Sogg, 2007 WL 1821306, at *10.  The Supreme Court "has never required the State to compensate the owner for the consequences of his own neglect."  Texaco, 454 U.S. at 530.

Plaintiffs argue that each of these four state court cases "have failed to recognize and fully appreciate the legal distinction between property that is escheated or 'deemed abandoned' (as in Texaco) and property that is 'presumed abandoned' and held in custodial trust[7] for eventual

---

[7]  Plaintiffs do not convincingly support their statement that abandoned property is held "in trust" for property owners.  The section of DAUPA to which plaintiffs cite to support this contention provides as follows:

> [A]ll funds received under this article . . . shall forthwith be deposited by the State Treasurer *in the General Fund* of the Commonwealth except that the State Treasurer shall retain in *a separate trust fund* an amount not exceeding *twenty-five thousand dollars ($25,000) plus twenty per centum of deposits and sums paid to the State Treasurer* under subsection (c) of section 1301.13 during the preceding twelve (12) months *from which the State Treasurer shall make reimbursements . . . and prompt payment of claims . . .*

72 P.S. § 1301.18 (emphasis added).  In other words, a percentage of deposits are held in "a separate trust fund" rather than the "General Fund" in order to make "prompt payments."  This

return to its rightful owners (as in DUAPA)."  Rep. at 4.  In essence, plaintiffs' position is that a state may retain interest on property "deemed" abandoned since absolute title passes to the state, but that Treasury may not retain interest on property "presumed" abandoned under DAUPA since only "custody and control" passes to Treasury.  The Court disagrees.  Contrary to plaintiffs' assertion, the four state court cases recognized this distinction but found it unpersuasive.  Nor is this Court persuaded by the distinction; whether "presumed" or "deemed" abandoned, the property owner's control is lost as a "consequence[] of his own neglect" and is not triggered by "overt state action."  Texaco, 454 U.S. at 530; see also Clark, 184 S.W.3d at 918; Sogg, 2007 WL 1821306, at *10.

Finally, plaintiffs' reliance on Canel v. Topinka, 212 Ill.2d 311 (Ill. 2004) does not alter the Court's conclusion.  In that case, the court stated that

> The custodial nature of the Uniform Disposition of Unclaimed Property Act serves to establish that the rights of the state are merely derivative from the rights of the owners of the abandoned property. The presumption of abandonment under the Uniform Disposition of Unclaimed Property Act is statutory and independent from common law principles of abandonment."
>
> * * *
>
> We know of no common law rule which supports defendants' position that, by virtue of plaintiff's presumed abandonment of his property, the dividends declared as an incident of ownership of the property become the property of the state. . . . Defendants propose that the state is "generous" in returning the shares of stock and keeping only the dividends issued on the stock. We reject the notion that the state, as the custodian of stock placed in its hands for safekeeping, may claim that it is entitled to the dividends issued on the stock.

Id. at 331 (emphasis omitted).

The Canel court, however, explicitly emphasized the narrow reach of its ruling: "We

_____

does not imply that Treasury holds abandoned property in trust for property owners.  Moreover, the Court does not base its holding on whether abandoned property is held in trust by Treasury.

14

stress that our opinion today is limited only to dividends accruing on stock held by the state

under the Act. We hold that such dividends may not be taken by the state without just

compensation to the owner." Id. at 326.  This Court first notes that the original class

representative in this action, Ronald Smolow, asserted that Treasury had retained interest on the

proceeds of his liquidated stocks, not dividends on unliquidated stocks. See generally Smolow v.

Hafer, 2007 WL 1879180, *2 (E.D. Pa. June 25, 2007).  Although the Second Amendment

complaint leaves open the possibility that Simon's and Pomerantz's property "perhaps [earned]

other appreciation and/or dividends and/or profits," Am. Compl. ¶¶ 7, 9, it is clear that the class

seeks recovery of interest rather than dividends.[8]  In sum, from its inception, this class action has

pertained to interest on reclaimed property, not to dividends.

      Even if plaintiffs also seek dividends, this Court is not bound by Canel.  Nor does the

Court find Canel persuasive, as Canel's discussion of Webb, Phillips, and Brown does not

---

[8] Specifically, the introduction to the Second Amended Complaint states as follows:

Plaintiff brings this class action to enjoin the Commonwealth of Pennsylvania . . . from taking unclaimed property . . . , using the property for public purposes and retaining the interest earned on such property that exceeds the expenses associated with handling such property when the property is claimed and returned to its owner. Plaintiff also seeks a mandatory injunction requiring Defendant to put into place appropriate accounting mechanisms to track expenses . . . and the interest earned on such property while in the Commonwealth's possession and custody.  Plaintiff seeks a mandatory injunction requiring Defendant to account to property owners for the interest earned and expenses incurred on their individual property when the property is claimed and returned.  Plaintiff further seeks a declaratory judgment that the retention of interest earned on private property when the property is claimed and returned constitutes a taking under the United States Constitution, pursuant to which just compensation could be due if interest earned on such property exceeds the expenses . . . .

The Court notes that the term "dividend" is not mentioned elsewhere in the Second Amended Complaint.

address any of the distinctions drawn by this Court or by the <u>Smyth</u>, <u>Clark</u>, <u>Hooks</u>, and <u>Sogg</u> courts.  <u>Canel</u> rests solely upon the "custodial nature" of the Illinois unclaimed property act (on the basis that it was not a true escheat act).[9]  <u>Canel</u>, 212 Ill.2d at 327.  As the Court has emphasized, this argument is unavailing in this case.

Accordingly, the Court concludes that, whether or not the interest earned on plaintiffs' property exceeded the cost of handling the property and processing their claims, plaintiffs have not suffered a taking without just compensation.

**VI.    CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted and judgment is entered in favor of defendant and against plaintiffs.

An appropriate order follows.

---

[9]  Plaintiffs cite <u>Travelers Exp. Co., Inc. v. State of Minn.</u>, 506 F. Supp. 1379, 1381 n.1 (D. Minn. 1981) for its statement that "[c]ustodial acts do not cut off the property rights of the owner."  The <u>Travelers</u> court's mention of custodial acts in a footnote referred simply to the proposition that the "[t]he state takes custody and remains the custodian in perpetuity.  Although the actual possibility of his presenting a claim in the distant future is not great, the owner retains his right of presenting his claim at any time no matter how remote."  <u>Id</u>.  Hence, the statement does not bear upon the Court's analysis in this case.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| **RICHARD D. SIMON, Individually** : | **CIVIL ACTION** |
| **and as Attorney-In-Fact for Vera** : | **No. 04-941** |
| **Pomerantz, and on behalf of all others** : | |
| **similarly situated, and VERA** : | |
| **POMERANTZ,  Individually through** : | |
| **Her Attorney-In-Fact and on behalf of** : | |
| **all others similarly situated,** : | |
| : | |
| **Plaintiffs,** : | |
| : | |
| : | |
| **ROBIN L. WIESSMAN,** : | |
| **Treasurer of the Commonwealth of** : | |
| **Pennsylvania,** : | |
| : | |
| **Defendant.** : | |

---

**ORDER**

 **AND NOW**, this 27th day of August, 2007, upon consideration of Defendant's Motion

for Summary Judgment (Document No. 72, filed July 30, 2007), Plaintiffs' Memorandum of Law

in Opposition to Defendant's Motion for Summary Judgment (Document No. 73, filed August 6,

2007), the Memorandum of Law of Robin L. Wiessman in Support of Defendant's Motion for

Summary Judgment (Document No. 76, filed August 15, 2007), and Plaintiffs' Reply

Memorandum in Opposition to Defendant's Motion for Summary Judgment (Document No. 77,

filed August 24, 2007), for the reasons set forth in the attached memorandum, **IT IS ORDERED**

that Defendant's Motion for Summary Judgment is **GRANTED** and that **JUDGMENT IS**

**ENTERED** in **FAVOR** of defendant, Robin L. Wiessman, and **AGAINST** plaintiffs, Richard D.

Simon and Vera Pomerantz, individually and on behalf of all other similarly situated.

17

      **IT IS FURTHER ORDERED** that the Clerk of Court shall **MARK** this case **CLOSED** for **STATISTICAL PURPOSES.**

                                       **BY THE COURT:**

                                       **/s/ Honorable Jan E. DuBois**
                                       **JAN E. DUBOIS, J.**